IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **LAREDO OUTLET SHOPPES, LLC** | § | |
| | § | **Case No. 21-31717** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | **(Emergency Hearing Requested)** |

### DECLARATION OF FARZANA KHALEEL IN SUPPORT OF
### DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY MOTION

I, Farzana Khaleel, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am Executive Vice President – Chief Financial Officer and Treasurer of CBL & Associates Properties, Inc. (the "**REIT**"), the parent company of CBL & Associates Limited Partnership (the "**Operating Partnership**," and together with its subsidiaries and affiliates, "**CBL**" or the "**Company**"). I have served in this position since 2013 and Senior/Executive Vice President since 2001. Prior to joining the Company, I was Vice President of Equitable Real Estate, where I worked for eighteen years in various senior financial positions. I am a certified public accountant, licensed in Georgia, and hold a BBA in Economics, an MBA in accounting, and an MS in Real Estate and Urban Affairs.

2. I respectfully submit this declaration in support of the chapter 11 case of Laredo Outlet Shoppes, LLC ("**Laredo**"). Except as otherwise indicated herein, the facts set forth in this declaration (this "**Declaration**") are based upon my personal knowledge, my review

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/CBLProperties. The Debtors' service address for the purposes of these chapter 11 cases is 2030 Hamilton Place Blvd., Suite 500, Chattanooga, Tennessee 37421.

WEIL:\97972958\14\32626.0003

of relevant documents, information provided to me by my team, employees of or advisors to Laredo, or my opinion based upon my experience, knowledge, and information concerning Laredo's operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration on that basis.

3. On the date hereof (the "**Petition Date**"), Laredo commenced with the Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). In my capacity as Executive Vice President – Chief Financial Officer and Treasurer of the REIT, I am knowledgeable and familiar with Laredo's day-to-day operations, business and financial affairs, books and records, and the circumstances that led to the commencement of this chapter case.

4. The Initial Debtors (as defined below) have previously requested a variety of relief in their "first day" motions filed in connection with the affiliated cases in order to minimize the adverse effects of the commencement of their chapter 11 cases on operations. Laredo is filing, contemporaneously herewith, a motion seeking (i) joint administration of its chapter 11 case with those of the Initial Debtors and (ii) certain orders to be made applicable to its chapter 11 case (the "**First Day Motion**"). I am familiar with the contents of the First Day Motion, and I believe that the relief sought therein is necessary to permit Laredo the most seamless transition into chapter 11. This, I believe, will preserve and maximize the value of Laredo's estate.

A. **General Background**

5. Laredo owns an outlet mall in downtown Laredo, Texas (the "**Laredo Property**") that features over forty-five (45) well-known name-brand outlet stores. Laredo is located at the Mexican border and relies heavily on customers crossing the border daily to shop

at the center. The border has been closed since April 2020 due to the COVID-19 pandemic, and as a result, shopping at the center was closed for approximately two months, and has been significantly impacted since the center was re-opened.

6. CBL owns Laredo with its joint venture partner, El Portal Center, LLC ("**El Portal**"), an affiliate of Horizon Group Properties, L.P. ("**Horizon**"). Laredo is a member-managed, Delaware limited liability company. Laredo Outlet JV, LLC ("**Laredo JV**") owns 100% of the equity interests in Laredo and is the sole member of Laredo. CBL Laredo Member, LLC, a direct subsidiary of the Operating Partnership, owns 65% of the equity interests in Laredo JV. The remaining 35% of Laredo JV is owned by El Portal. Pursuant to that certain Property Management Agreement, dated as of May 10, 2016, by and between Laredo and Horizon (the "**Management Agreement**"), Horizon manages the Laredo Property.

**B.  Laredo Construction Loan**

7. Laredo and U.S. Bank, National Association ("**U.S. Bank**"), as administrative agent and a lender, and the certain others lenders (collectively, the "**Laredo Lenders**") are parties to that certain Construction Loan Agreement dated May 13, 2016 (as amended and as may be further amended, restated, modified and/or supplemented from time to time, the "**Laredo Loan Agreement**").[2] Under the Laredo Loan Agreement, the Lenders agreed to extend credit to Laredo in the aggregate principal amount of up to $91,300,000 (the "**Laredo Loan**").

---

[2] The Laredo Loan Agreement was subsequently amended by (i) Amendment No. 1 to the Laredo Loan Agreement dated as of June 28, 2017 and effective as of March 31, 2017; (ii) the letter amendment dated August 23, 2017; (iii) the letter amendment dated May 31, 2018; (iv) the letter amendment dated September 28, 2018; (v) the letter amendment dated May 13, 2019; (vi) Amendment No. 2 to the Laredo Loan Agreement dated as of May 31, 2019, and (vii) the Amendment No. 3 to the Laredo Loan Agreement dated as of April 20, 2020.

8. In connection with the Laredo Loan Agreement, Laredo provided three notes dated May 13, 2016: (i) a promissory note in the principal amount of $41,300,000 in favor of U.S. Bank; (ii) a promissory note in the principal amount of $20,000,000 in favor of Associated Bank, National Association and (iii) a promissory note in the principal amount of $30,000,000 in favor of Midfirst Bank (together with all extensions, renewals, modifications, substitutions and replacements thereof and thereof, collectively, the "**Notes**").

9. The Notes are secured by (i) that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, Fixture Filing and Financing Statement dated as of May 13, 2016 (as amended, restated, modified and/or supplemented from time to time, the "**Deed of Trust**"), made and executed by Laredo in favor of John T. Hammond, as trustee ("**Trustee**"), for the benefit of U.S. Bank as administrative agent, and (ii) that certain Leasehold Deed of Trust, Assignment of Lease and Rents, Security Agreement, Fixture Filing and Financing Statement dated as of May 13, 2016 (as amended, restated, modified and/or supplemented from time to time, the "**Leasehold Deed of Trust**"), made and executed by Laredo in favor of John T. Hammond, as trustee, for the benefit of U.S Bank as administrative agent. In connection with the Laredo Loan Agreement, the Operating Partnership (the "**CBL Guarantor**") made and executed that certain Payment Guaranty Agreement dated as of May 13, 2016, as amended by that certain Amendment No. 1 dated as of February 4, 2019 and effective as of January 30, 2019 (as amended, restated, modified and/or supplemented from time to time, the "**Guaranty**").

10. As of the Petition Date, the amount outstanding under the Laredo Loan Agreement is approximately $39.6 million in unpaid principal, plus accrued and unpaid interest, fees and other expenses. In March 2021, the Company hired an independent appraiser to

4

conduct an appraisal of the Laredo Property. The appraiser determined the value of the Laredo Property to be approximately $42.9 million, in excess of the Laredo Loan balance.

**C.     Negotiations and Lender Actions**

11. On November 1, 2020 (the "**CBL Petition Date**"), the CBL Guarantor and certain of its affiliates (collectively, the "**Initial Debtors**") commenced their chapter 11 cases. On November 2, 2020, U.S. Bank sent a letter to Laredo, CBL, and Horizon asserting, among other things, that the filing of CBL Guarantor's chapter 11 case was an Event of Default under the Laredo Loan Agreement and reserving all of the Laredo Lenders' rights in connection with the alleged default, including the right to impose interest at the Default Rate (as defined in the Laredo Loan Agreement).

12. On November 10, 2020, U.S. Bank sent a letter to Laredo, CBL, and Horizon asserting, among other things that interest will accrue on the outstanding Obligations (as defined in the Laredo Loan Agreement) at the Default Rate, which is three percent (3%) per annum in excess of the Loan Rate. On November 30, 2020, U.S. Bank sent a letter to Laredo, CBL, and Horizon alleging, among other things, (i) an additional Event of Default arising from Laredo's failure to maintain a Debt Service Coverage Ratio greater than or equal to 1.20:1.00 for the calendar quarter ended September 30, 2020 and (ii) Laredo's alleged failure to pay down the outstanding principal balance of the Loan in the amount and within the time period set forth in the Laredo Loan Agreement to cure the Debt Service Coverage Ratio default.

13. After the CBL Petition Date, the Initial Debtors continued to discuss a potential resolution with U.S. Bank with respect to the Laredo Loan, but were unable to reach agreement. More recently, the Initial Debtors filed the *Second Amended Joint Chapter 11 Plan of CBL & Associates Properties, Inc. and Its Affiliated Debtors* (Docket No. 1126) (as may be

subsequently amended, the "**Plan**"). In connection with the Plan, the Initial Debtors have engaged with Property Level Lenders (as defined in the Plan) over the treatment of their Property Level Guarantee Claims. The Initial Debtors and their advisors engaged with U.S. Bank and its advisors but, to date, have been unable to reach an agreement concerning the treatment of any Property Level Guaranty Claim relating to Laredo. The parties appear to disagree over the value of the Laredo Property.

14. On May 10, 2021, U.S. Bank sent a letter to Laredo stating that, in its capacity as a Lender under the Laredo Loan Agreement, U.S. Bank seized $387,866.65 from a Laredo account held with U.S. Bank and applied such funds to reduce the principal under the Laredo Loan Agreement. The seized cash is needed to continue to operate the Property.

15. Thereafter, on May 10, 2021, U.S. Bank filed a complaint and an accompanying motion in the United States District Court for the Southern District of Texas seeking, among other things, the appointment of a receiver to take control of Laredo and collect rents, income, and profits from the Laredo Property. *See U.S. Bank, N. A. v. Laredo Outlet Shoppes, LLC*, Civil No. 5:21-cv-00050 (S.D. Tex. May 10, 2021) (Docket Nos. 1 & 2) (the "**Receiver Action**"). A hearing on the Receiver Action is scheduled for June 1, 2021.

16. Consequently, Laredo, by action of its sole member, Laredo JV, and the unanimous consent of CBL Laredo Member and El Portal, as the owners of 100% of the equity interests of Laredo JV, has decided to commence this chapter 11 case to protect its interests in the Laredo Property and to avoid the adverse consequences of a receivership.

**D.     First Day Motion**

17. Pursuant to the *Emergency Motion of Debtors Requesting (I) Joint Administration of Additional Chapter 11 Case and (II) That Certain Orders in the Chapter 11*

*Cases of CBL & Associates Properties, Inc. et al. be Made Applicable to New Debtor* (the "**First Day Motion**") filed contemporaneously herewith, Laredo and the Initial Debtors (together, the "**Debtors**") request entry of an order that, among other things, (i) directs joint administration of the chapter 11 case of Laredo with the jointly administered chapter 11 cases of CBL & Associates Properties, Inc., *et al.*, (Case No. 20-35226) (DRJ) for procedural purposes only; and (ii) directs certain generally applicable orders previously entered by the Court in the Initial Debtors' chapter 11 cases.

18. With respect to the use of Cash Collateral (as defined in section 363 of the Bankruptcy Code), the Debtors seek application of the pre-existing Cash Collateral Order[3] to Laredo's chapter 11 case and will provide the Laredo Lenders with adequate protection in accordance with paragraph 11(a) of the Cash Collateral Order, including:

   i. continuing to maintain and operate the Laredo Property in the ordinary course of business, including the payment of operating expenses including real estate taxes, required capital expenditures, and tenant allowances associated with the Laredo Property (the "**Property Expenses**");

   ii. segregate all rents and revenues received from tenants at the Laredo Property and all other proceeds from operation of the Laredo Property after payment of the Property Expenses from operation of the Laredo Property; and

   iii. prepare and provide to U.S. Bank monthly operating budgets (the "**Operating Budget**") for the Laredo Property as set forth in paragraph 12 of the Cash Collateral Order and provide such information relating to the Laredo Property as shall reasonably be requested by U.S. Bank.

19. As mentioned above, El Portal, an affiliate of Horizon, is CBL's joint venture partner with respect to the Laredo Property. Laredo is a party to the Management Agreement with Horizon pursuant to which Horizon is responsible for management of the

---

[3] "**Cash Collateral Order**" means *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Determining Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* (ECF No. 1018).

7

WEIL:\97972958\14\32626.0003

Laredo Property. Importantly, Horizon pays the wages of the employees at the Laredo Property, which Laredo reimburses pursuant to the Management Agreement. Therefore, in order to ensure that the Laredo Property continues to be maintained safely and in good working order and that employees are paid, it is necessary for Laredo to be permitted to continue performing in the ordinary course pursuant to the Management Agreement, and to pay outstanding prepetition amounts, if any.

20. With respect to utilities, Laredo and the Initial Debtors seek application of the pre-existing Utilities Order[4] to Laredo's chapter 11 case, subject to the Court scheduling a hearing (the "**Utilities Hearing**"), to the extent necessary on a date to be determined, to resolve disputes between Laredo and any utility company providing services to Laredo concerning the procedures outlined in the Utilities Order.

21. With respect to insurance, Laredo and the Initial Debtors seek application of the pre-existing Insurance Order[5] to Laredo's chapter 11 case, except as to any insurance programs and obligations of Laredo that are managed or held by Horizon.

22. I believe that, based on the complexity of these chapter 11 cases and Laredo's urgent need to continue operations during these cases, emergency consideration of the First Day Motion is warranted.

23. Based on the foregoing, I believe that the relief requested in the First Day Motion is in the best interests of Laredo, its estate, and all other parties in interest.

---

[4] "**Utilities Order**" means *Order (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Companies; (II) Establishing Procedures for Resolving Objections by Utility Companies, (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service, and (IV) Granting Related Relief* (ECF No. 61).

[5] "**Insurance Order**" means *Order (I) Authorizing Debtors to (A) Maintain Their Insurance Programs and Surety Bond Program and (B) Honor All Obligations with Respect Thereto, (II) Modifying Automatic Stay with Respect to Workers' Compensation Claims, and (III) Granting Related Relief* (ECF No. 70).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 26, 2021
Chattanooga, Tennessee

/s/ *Farzana Khaleel*
Farzana Khaleel