**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CBL & ASSOCIATES PROPERTIES, INC., *et al.*[1] | § | Case No. 20-35226 (DRJ) |
| | § | (Jointly Administered) |
| Debtors. | § | |
| In re: | § | Chapter 11 |
| | § | |
| LAREDO OUTLET SHOPPES, LLC, | § | Case No. 21-31717 |
| | § | |
| Debtor. | § | |

**OBJECTION TO EMERGENCY MOTION OF DEBTORS REQUESTING (I) JOINT ADMINISTRATION OF ADDITIONAL CHAPTER 11 CASE AND (II) THAT CERTAIN ORDERS IN THE CHAPTER 11 CASE OF CBL & ASSOCIATES PROPERTIES INC., ET AL., BE MADE APPLICABLE TO NEW DEBTOR**

U.S. Bank National Association ("U.S. Bank"), as the agent for the senior secured lenders to debtor Laredo Outlet Shoppes, LLC ("Laredo Outlets") and as a senior secured lender, files this Objection to the Emergency Motion of Debtors Requesting (I) Joint Administration of Additional Chapter 11 Case and (II) That Certain Orders in the Chapter 11 Case of CBL & Associates Properties Inc., *et al*., Be Made Applicable to New Debtor (the "Motion") and states as follows in support thereof:

## I. Introduction

1. Under the guise of a joint administration motion, debtor Laredo Outlets is seeking to deprive its creditors of due process through its request to have over 18 orders, including a final cash collateral order, long ago entered in the currently pending bankruptcy cases of the CBL

[1] A complete list of the debtors in these chapter 11 cases may be obtained at https://dm.epiq11.com/CBLProperties (collectively, the "CBL Debtors").

Debtors, and all pending orders in those cases be automatically binding on creditors of Laredo Outlets without opportunity for notice and objection. While certain first day relief is, of course, routinely granted in bankruptcy cases, Laredo Outlets is entirely overstepping the boundaries of such typical relief by requesting binding application of all orders in a final manner in violation of Bankruptcy Rules 6003 and 4001(b)(2). There is no legal support for their request, nor do they even attempt to cite any in the Motion aside from 11 U.S.C. § 105.

2. Moreover, the currently proposed plan for the 170 plus CBL Debtors is one of corporate restructuring – vastly different than a real property restructuring for Laredo Outlets. Laredo Outlets owns real property that needs to be sold to satisfy its creditors. The real property is fully encumbered by the construction loan provided by U.S. Bank and the other lenders to the loan agreement. While the debtors may try to fit the square peg into a round hole and argue that U.S. Bank's claim is an "other secured claim" in class 2, the current plan description of how such claims will be treated is insufficient. It gives a variety of options and fails to identify the actual treatment (i.e., will the property be returned, will the claim be paid in full, or will the loan obligations be assumed, etc). Given the opportunity, U.S. Bank would have objected to the disclosure statement due to a lack of information.

3. U.S. Bank addresses in detail below Laredo Outlets' failure to meet the adequate protection requirements for the use of cash collateral. However, in addition to its specific objections to the relief Laredo Outlets' seeks through each order it seeks to copy into this case, U.S. Bank also intends to file a motions to dismiss, because it was filed in bad faith, and/or for other relief.

4. U.S. Bank requests a briefing schedule from this Court to do so and, in the interim for the Court to hold the Motion, and all requests for relief therein, in abeyance. No harm will be

suffered by Laredo Outlets by holding the Motion in abeyance as it will still be protected by the automatic stay and has no immediate need for the majority of the relief it seeks through application of the orders already entered in the CBL Debtors' cases (the only immediate need identified was for the use of cash collateral, which is addressed below).

## II. This Case Was Filed in Bad Faith

5. This case was filed on the eve of a hearing to appoint a receiver over Laredo Outlets. U.S. Bank, as agent for the lenders that provided the loan secured by Laredo Outlets' property, filed the receivership case because Laredo Outlets repeatedly told U.S. Bank that it did not intend to keep the property and wanted to turn it over to U.S. Bank on the condition that U.S. Bank agree that its guaranty claim against one of the CBL Debtors – CBL & Associates, Limited Partnership – was valued at $0.00. The CBL Debtors argue the guaranty claim is valued at $0.00 because it has obtained a $42.9 million appraisal of the property.

6. U.S. Bank was amenable to return of the property. However, given the significant impact of the COVID-19 pandemic on the real estate markets and the border crisis in Laredo, U.S. Bank cannot rely on the $42.9 million valuation of the property espoused by the CBL Debtors without a test of the market. U.S. Bank filed the receivership action to provide a platform for the return of the property to U.S. Bank and to implement a sale process. Laredo Outlets clearly filed this case to avoid a test of the market on the value of the property.

7. A bankruptcy petition must "serve[] a valid bankruptcy purpose." *See, e.g.*, *In re 15375 Memorial Corp.*, 589 F.3d 605, 618 (3d Cir. 2009); and *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999). The bankruptcy cannot be filed "merely to obtain tactical litigation advantage." *Id.* These equitable limitations on the chapter 11 process are necessary to ensure that the hardship on particular creditors resulting from the exercise of the debtor's considerable

bankruptcy powers (the automatic stay, the exclusive right to propose a plan, the discharge of debts, etc.) are justified. *SGL Carbon*, 200 F.3d at 165-66; *see Integrated Telecom*, 384 F.3d 108, 120 n.4 ("The good faith requirement is necessitated as much by the hardship of Chapter 11 to certain interests as it is by the benefit to others.").

8. Unlike the CBL Debtors' cases already pending before this Court, this case is a two-party dispute over the value of the property and, by extension thereof, the dollar value of U.S. Bank's guaranty claim against the Guarantor. There was no good faith basis for the filing of this case. The value of the guaranty claim will be determined by this Court in the claims resolution process. The value of the property should be determined by testing the market. By filing this case, Laredo Outlets and the CBL Debtors will achieve no greater result than will be achieved in the claims resolution process and at the same time will recklessly incur thousands of dollars in unnecessary professional fees and waste the resources of this Court.

9. U.S. Bank will brief these issues in detail in its motion to dismiss.

## III. Laredo Outlets May Not Use Cash Collateral Unless Demonstrates that U.S. Bank is Adequately Protected.

10. The only immediate need identified by Laredo Outlets in the motion is for the use of cash collateral. However, Laredo Outlets is prohibited from using the cash collateral unless U.S. Bank consents, or this Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 362(c)(2); *Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 210 (N.D. Ill. 1993). Adequate protection of a secured lender's interest in cash collateral is *mandatory*. 11 U.S.C. § 363(e) ("at any time … the court, with or without a hearing, shall prohibit or condition such use … as is necessary to provide adequate protection of such interest."); *Dacon Bolingbrook*, 153 B.R. at 210; *In re Heatron*, 6 B.R. 493, 495 (Bankr. W.D. Mo. 1980); 3 COLLIER ON BANKRUPTCY ¶ 363.05 (3d ed. Rev. 2005) ("if a trustee seeks to use cash collateral and cannot

obtain the consent of the entity with an interest in the collateral, adequate protection must be furnished before the cash collateral can be used.").

11. "The purposes of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for." *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) (citation omitted). "Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy." *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986). "The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment." *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000).

12. In *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.),* 727 F.2d 1017 (11th Cir. 1984), the Eleventh Circuit explained the significance of adequate protection when authorizing the use of cash collateral over a secured party's objection. After noting a debtor's general need for cash collateral for rehabilitation, the court stated "[o]pposed to the debtor's need for use of cash collateral is the valid concern that free use of secured 'property' may result in the dissipation of the estate. Because security interests are 'property rights' protected by the Fifth Amendment from public taking without just compensation, . . . the Bankruptcy Court cannot allow the secured interest to be threatened by improper use of cash proceeds." *Id*. at 1019 (citing *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273 (1940)). As a result, the "guiding inquiry is whether [the secured creditor's] security interests are 'adequately protected' absent the additional protection that the cash collateral would provide." *Id*.

13. This restriction on use of cash collateral is critical "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the [Debtor]." *In re Earth-Lite, Inc.*, 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981).

Cash is the highest, best and most secure form of collateral. *See, e.g.*, *In re Berens*, 41 B.R. 524, 527 (Bankr. D. Minn. 1984) ("if the [d]ebtor is allowed to use the cash collateral[,] the creditors' [s]ecurity – the collateral – is gone"). In other words, any order authorizing a debtor's use of cash collateral absent the secured party's consent must specifically address whether the secured party is adequately protected by such use and, if not, how the cash collateral use should be conditioned so that it is. *See Chrysler Credit Corp v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017 (11th Cir. 1984); *In re Dynaco Corp.*, 162 B.R. 389 (Bankr. D.N.H. 1993).

14. Adequate protection may be furnished in a variety of forms and section 361 of the Bankruptcy Code provides an illustrative guide. *See* 11 U.S.C. § 361. In short, because U.S. Bank does not consent to Laredo Outlets' use of the cash collateral, Laredo Outlets must make compensatory payments to U.S. Bank, provide U.S. Bank with additional or replacement liens, and/or provide U.S. Bank with the indubitable equivalent of its interest in the property. *See id.* U.S. Bank must be fully and adequately compensated for the diminution in value that will result from Laredo Outlets' use of the cash collateral. Further, section 363(c)(4) of the Bankruptcy Code requires Laredo Outlets to immediately account to U.S. bank for all cash collateral in its possession, custody or control, and to segregate all such cash collateral. 11 U.S.C. § 363(c)(4).

15. Laredo Outlets bears the burden of proposing an adequate protection package. 11 U.S.C. § 363(p)(1) ("the [debtor in possession] has the burden of proof on the issue of adequate protection"); *In re Swedeland Dev. Group*, 16 F.3d 552, 564 (3d Cir. 1994); s*ee generally* 3 COLLIER ON BANKRUPTCY ¶ 363.06 (3d ed. rev. 2005). Indeed, "the [d]ebtors' standard in cash collateral cases is a high one." *First Bank of Miller v. Wieseler*, 45 B.R. 871, 876 (D.S.D. 1985).

16. Importantly, simply "needing" the use of cash collateral for continued operations is not a basis for allowing Laredo Outlets to use U.S. Bank's cash collateral. *In re McCutchen*, 115

B.R. 126, 133 (Bankr. W.D. Tenn. 1990) (denying use of cash collateral, holding that "mere need does not satisfy the requirements of sections 361 and 363"); *see also In re Goode*, 235 B.R. 584, 590 (Bankr. E.D. Tenn. 1999) ("While the Court understands the ramifications of failing to get [cash collateral] authorization can be devastating to a debtor's case, that fact alone simply cannot suffice as the sole means by which to justify the use of a creditor's cash collateral . . ."). While the Court must be flexible in applying the adequate protection standard, "such flexibility must not operate to the detriment of the secured creditor's interest." *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988).

17. In order to use U.S. Bank's cash collateral, Laredo Outlets must prove the correct value of the collateral. *See*, *e.g.*, *George Ruggiere*, 727 F.2d at 1019 ("In determining whether a creditor's secured interests are [] protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value." (emphasis in original)).

18. Laredo Outlets has not proven the value of the collateral. It has merely provided an affidavit of one of its employees of hearsay testimony on a valuation it obtained.

19. Even if its valuation is considered, Laredo Outlets has not shown that U.S. Bank has a sufficient equity cushion given its lack of a plan for the property. "While the present value of a debtor's assets may be sufficient to constitute adequate protection, a debtor's future operational plans may result in a rapid deterioration of the collateral. Where an equity cushion is insufficient in size or likely to erode, it cannot, standing alone, constitute adequate protection." *Sharon Steel*, 159 B.R. at 169 (citing *In re Liona Corp., N.V.*, 68 B.R. 761, 767 (Bankr. E.D. Pa. 1987); *see also In re Stoney Creek Tech., LLC*, 364 B.R. 882, 891 (Bankr. E.D. Pa. 2007) (regarding adequate protection concerning priming financing, "an equity cushion may provide

adequate protection but that an equity cushion alone will not be determinative."); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865-66 (Bankr. W.D. Pa. 2003) ("Where an equity cushion is insufficient in size or likely to erode, it cannot, standing alone, constitute adequate protection.").

20. In *Sharon Steel*, the court held that a $40.9 million equity cushion did not provide lenders with sufficient adequate protection to justify debtor's use of cash collateral when debtors proposed to recommence its operations under a one-year business plan. 159 B.R. at 173. The *Sharon Steel* court held that this sizable equity cushion was insufficient because the proposed plan was unduly optimistic and its failure could rapidly erode the existing equity cushion so as to prejudice the secured creditors as well as unsecured creditors: "[l]osses can quickly mount, not only eroding any equity cushion for the objecting Lenders, but also allowing the employees and postpetition unsecured creditors to become unsuspecting and unwilling contributors to the Debtor's unfortunate situation." *Id.*; *see also Stoney Creek*, 364 B.R. at 891-92 (holding secured lender was not provided adequate protection when proposed financing could cause 61% equity cushion to deteriorate to 42% due to future operational risks and absence of viable plan); *Shaw Indus.*, 300 B.R. at 865-66 (same when proposed financing could cause 66% equity cushion to deteriorate to 25%); *In re Timber Products, Inc.*, 125 B.R. 433, 437-440 (Bankr. W.D. Pa. 1990) (same when proposed financing could cause 59% equity cushion to deteriorate to 27%).

21. Nevertheless, in the event this Court grants Laredo Outlets authority to use cash collateral, U.S. Bank requests that (i) such grant be limited to no more than two weeks; (ii) such grant be limited to the actual and necessary expenses of Laredo Outlets during that period set forth in a budget agreed upon by U.S. Bank and Laredo Outlets, which actual and necessary expenses shall not include professional fees; (iii) Laredo Outlets provide U.S. Bank reporting on its operations and compliance with the agreed upon budget; (iv) U.S. Bank be granted senior

replacement liens, a superiority claim and adequate protection payments in the amount of unpaid interest, fees and expenses due under its credit agreement with Laredo Outlets; and (v) U.S. Bank's replacement liens, superpriority claims and adequate protection payments have priority over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552 or 726.

22. Imposing these conditions on Laredo Outlet's use of cash collateral will help ensure that U.S. Bank is adequately protected and that it will receive the value of it's bargained for rights.

WHEREFORE, U.S. Bank respectfully request that this Court (i) set a briefing schedule for U.S. Bank to file a motions to dismiss and/or for other relief this bankruptcy case, (ii) hold the Motion in abeyance until it is ruled upon, and (iii) grant U.S. Bank such other and further relief as is appropriate under the circumstances.

[Signatures on Following Page]

Respectfully submitted,

By: /s/ *Ira L. Herman*

Ira L. Herman
Texas Bar No. 24063314
Blank Rome LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.885.5052
Facsimile: 212.658.9734
Email: iherman@blankrome.com

-and-

Kenneth J. Ottaviano (*pro hac vice* pending)
Paige B. Tinkham (*pro hac vice* pending)
Blank Rome LLP
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone: 312.776.2514
Facsimile: 312.264.2443
Email: kottaviano@blankrome.com
ptinkham@blankrome.com

**CERTIFICATE OF SERVICE**

I certify that on May 27, 2021, I electronically filed the foregoing document with the Clerk of the Court for the Southern District of Texas, Houston Division, using the CM/ECF system. The ECF system will send a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept service of this document by electronic means.

*/s/ Ira L. Herman*